United States District Court
Southern District of Texas
**ENTERED**
November 14, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NLB CORP., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-1090 |
| | § | |
| PSI PRESSURE SYSTEMS LLC, | § | |
|     Defendant. | § | |

# MEMORANDUM AND ORDER

This patent case is before the Court on the Motion to Exclude Patent Infringement Testimony by NLB Witnesses [Doc. # 50] filed by Defendant PSI Pressure Systems LLC d/b/a PSI Pressure Systems Corp. ("PSI"); Defendant's Motion to Exclude Testimony of Plaintiff's Expert William Marscher [Doc. # 51]; Defendant's Motion for Summary Judgment [Doc. # 52]; and Plaintiff NLB Corp. ("NLB")'s Motion for Summary Judgment and to Strike PSI's Expert Reports [Doc. # 53].[1]  Having reviewed the record and the governing legal authorities, the Court **grants** summary judgment in favor of PSI as to literal infringement by the NX-series

---

[1] Plaintiff NLB filed a Response to the Motion to Exclude Patent Infringement Testimony by NLB Witnesses [Doc. # 54], and PSI filed a Reply [Doc. # 61]. NLB filed a Response to the Motion to Exclude Testimony of William Marscher [Doc. # 58], and PSI filed a Reply [Doc. # 60]. NLB filed a Response to PSI's Motion for Summary Judgment [Doc. # 56], and PSI filed a Reply [Doc. # 59]. PSI filed a Response to NLB's Motion for Summary Judgment and to Strike PSI's Expert Reports [Doc. # 62], NLB filed a Reply [Doc. # 63], and PSI filed a Sur-Reply [Doc. # 66].

products, as to infringement under the doctrine of equivalents by the NX-series products, and as to PSI's permissible repair defense in connection with the NLB-type replacement parts. The Court **denies** summary judgment on the false advertising claim. The Court **denies** NLB's Motion for Summary Judgment. The Court **denies as moot** the motions to exclude expert testimony of NLB corporate witnesses, William Marscher, Dara Childs, and Randy Hinson.

## I.     BACKGROUND

NLB designs, manufactures, and markets high pressure waterjet systems (pumps) and components. NLB's pumps can be used to clean industrial equipment for the oil and gas industry.

NLB is the owner of United States Patent No. 7,121,812 ("the '812 Patent"), entitled High Pressure Pump Having Replaceable Plunger/Valve Cartridges.[2] The pump covered by the '812 Patent is a double guided system. In single guided valve assemblies, only the valve stem is guided. The double guided valve guide, however, guides both the valve stem and the valve head. It includes one section with a reduced diameter that guides the stem portion of the valve and a second section with an

---

[2]     Jamie Forrest, a former NLB employee, is the inventor of the pump covered by the '812 Patent. Forrest now works for PSI as its Vice President of Engineering.

increased diameter that guides the valve head. According to NLB, this double guiding feature improves valve performance and increases the life of the valve.

PSI manufactures and sells competing high pressure waterjet pumps and components. PSI sells NX-series pumps, NX-series cartridges, and NX-series components (the "NX-series products") that NLB alleges infringe Claim 33 of the '812 Patent. Additionally, PSI manufactures and sells replacement parts for use with NLB's pumps (the "NLB-type" parts). NLB alleges that these NLB-type parts infringe Claim 33 when used by PSI's customers in a pump.

PSI made a statement on its Facebook page that characterizes its NLB-type parts as made from "superior materials" and "guaranteed to last longer" than "competitors' parts." *See* Facebook Posts, Exh. 3 to First Amended Complaint [Doc. # 6]. NLB alleges that these statements constitute false advertising under the Lanham Act.

NLB filed this lawsuit alleging that the NX-series products infringe Claim 33 of the '812 Patent, either literally or under the doctrine of equivalents. NLB alleges further that PSI's sale of the NLB-type parts induces infringement of Claim 33 in violation of 35 U.S.C. § 271(b) and contributes to infringement in violation of § 271(c). NLB asserts a violation of the Lanham Act based on PSI's statements on its Facebook page.

Following claim construction based on the parties' agreement, and the completion of discovery, each party moved for summary judgment on the infringement and Lanham Act claims. Each party also moved to exclude certain expert testimony offered by the opposing party. The Motions have been fully briefed and are now ripe for decision.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "When evaluating a motion for summary judgment, the court views the record evidence through the prism of the evidentiary standard of proof that would pertain at a trial on the merits." *SRAM Corp. v. AD-II Engineering, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006).

Summary judgment on infringement is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Ultimatepointer, L.L.C. v. Nintendo Co., Ltd.*, 816 F.3d 816, 824 (Fed. Cir. 2016). The infringement analysis at the summary judgment stage requires the Court to

compare the patent claims as construed with the accused device. *See Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313, 1317 (Fed. Cir. 2016).

## III. LITERAL INFRINGEMENT

NLB argues that the NX-series products literally infringe Claim 33 of the '812 Patent. Both NLB and PSI have moved for summary judgment on the literal infringement claim.

### A. Governing Legal Principles

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . infringes the patent." 35 U.S.C. § 271(a); *Lexmark Int'l, Inc. v. Impression Prods., Inc.*, 816 F.3d 721, 726 (Fed. Cir. 2016); *Int'l Bus. Machines Corp. v. Booking Holdings Inc.*, 775 F. App'x 674, 677 (Fed. Cir. May 22, 2019). "An infringement analysis has two steps." *Indivior Inc. v. Dr. Reddy's Labs., S.A.*, 930 F.3d 1325, 1336 (Fed. Cir. 2019) (citing *Clare v. Chrysler Grp. LLC*, 819 F.3d 1323, 1326 (Fed. Cir. 2016)).

In the first step, the Court construes the asserted claims. *Id*. In this case, the parties agreed on the proper construction of the relevant claim terms. *See* Joint Proposed Claim Construction Chart [Doc. # 27]. The Court agreed with, and adopted, the parties' proposed claim construction. *See* Order [Doc. # 28].

In the second step, the Court determines whether the accused product meets each limitation of the claim as construed. *See Indivior*, 930 F.3d at 1336. The comparison is only to the patent claims as construed, not to any specific embodiment in the patent specification or to the patent holder's commercial embodiment. *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1347 (Fed. Cir. 2003); *Fleet Eng'rs, Inc. v. Mudguard Techs., LLC*, 761 F. App'x 989, 992 (Fed. Cir. Feb. 25, 2019). "The patentee has the burden of proving infringement by a preponderance of the evidence." *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1328 (Fed. Cir. 2019).

**B.     Analysis**

Claim 33 of the '812 Patent covers a discharge valve assembly for a high pressure fluid jetting system comprising:

> a discharge valve guide having a discharge valve guide skirt and a discharge valve guide stem said discharge valve guide skirt is of a greater diameter than said discharge valve guide stem;

> a discharge valve having a discharge valve stem and a discharge valve head of a greater diameter than said discharge valve stem, said discharge valve stem axially guided within said discharge valve guide stem and **said discharge valve head axially guided within said discharge valve guide skirt** along a common axis; and

> a discharge valve spring located within said discharge valve stem.

'812 Patent, Claim 33 (emphasis added). PSI argues that its NX-series products do not infringe Claim 33 because the valve head is not guided in PSI's products.

NLB alleges that PSI's NX-series products infringe Claim 33 of the '812 Patent because the "discharge valve guide skirt has a certain geometry that causes fluid (water) flowing through the valve to exhibit a centering force that axially guides the valve head within the valve guide skirt."[3] NLB's Motion, p. 14. Stated differently, NLB argues that "'indirect' guiding is provided by water in the valve that behaves in a certain manner due to the geometry of PSI's valve guide." *Id*. at 15.

The parties agreed to the proper construction of certain claim terms in Claim 33, and the Court adopted the parties' agreed construction. The "valve guide" is construed to mean a "***valve element*** that steadies or directs movement of a valve." Joint Proposed Claim Construction Chart [Doc. # 27], p. 3. The Court adopted the parties' agreed construction that the valve guide has a forward portion, referred to as the "valve guide skirt," and an aft portion, the "valve guide stem." *See id.* The "valve guide skirt" has been construed, in accordance with the parties' agreement, to mean "a forward portion of the valve guide" and the "valve guide" has been construed to

---

[3] In support of its argument that water and geometry guide the valve head, NLB relies on the expert report and testimony of William Marscher. PSI has moved to exclude Marscher's testimony regarding this "Lomakin effect," arguing that it does not apply to PSI's NX-series products. For purposes of the motions for summary judgment, the Court assumes, but does not find, that water and geometry can guide the valve head in PSI's NX-series products.

mean a valve element. *See id.* Therefore, the "valve guide skirt" is a forward portion of a valve "element."

Further, the Court, based on the parties' agreement, construed the claim term "said discharge valve head axially guided within said discharge valve guide skirt" in Claim 33 to mean "the valve guide skirt steadies or directs movement of the valve head along a longitudinal axis." *See id.* Therefore, it is the "valve guide skirt" that "directs movement of the valve head." As noted above, the "valve guide skirt" is a forward portion of a "valve element." To infringe Claim 33 literally, the valve head must be guided by the forward portion of a valve element. Neither water nor "geometry" is a "valve element." Consequently, guiding the valve head with water or geometry does not literally infringe Claim 33 of the '812 Patent. PSI is entitled to summary judgment on NLB's literal infringement claim. NLB's motion for summary judgment on this issue is denied.

## IV. <u>DOCTRINE OF EQUIVALENTS</u>

NLB argues that even if there is no literal infringement, the NX-series products infringe Claim 33 of the '812 Patent under the doctrine of equivalents because guiding with water is the equivalent of guiding with an element of the valve. PSI argues that the doctrine of equivalents cannot apply as asserted by NLB because the equivalent

on which NLB relies – guiding with water – would "ensnare" the prior art. Both NLB and PSI have moved for summary judgment on this claim.

### A. Governing Legal Principles

"The doctrine of equivalents prevents an accused infringer from avoiding infringement by changing only minor or insubstantial details of a claimed invention while retaining their essential functionality." *Sage Prod., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1424 (Fed. Cir. 1997); *Choon's Design, LLC v. Idea Vill. Prod. Corp.*, 776 F. App'x 691, 697 (Fed. Cir. June 24, 2019). "A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product was insubstantial." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009).

The Federal Circuit has emphasized that the doctrine of equivalents is the exception and "not the rule." *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1330 (Fed. Cir. 2019). "Patent infringement is principally determined by examining whether the accused subject matter falls within the scope of the claims." *Id*. Therefore, "courts have placed important limitations on a patentee's ability to assert infringement under the doctrine of equivalents." *Id*.

One of those limitations is referred to as "ensnarement." A doctrine of equivalents theory cannot succeed if it will encompass or "ensnare" the prior art. *See*

*G. David Jang, M.D. v. Bos. Sci. Corp.*, 872 F.3d 1275, 1285 (Fed. Cir. 2017), *cert. denied*, __ U.S. __, 139 S. Ct. 58 (2018). The "ensnarement" limitation applies even if there is equivalence as to each element of the asserted claim. *See id.*

Ensnarement is generally determined using a "hypothetical claim analysis." *See id.* "Under a hypothetical claim analysis, *a patentee* proposes a hypothetical claim that is sufficiently broad in scope to literally encompass the accused product or process." *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000) (emphasis added). "The burden of producing evidence of prior art to challenge a hypothetical claim rests with an accused infringer, but the burden of proving patentability of the hypothetical claim rests with the patentee." *Jang*, 872 F.3d at 1285, 1287 (the patentee has the burden of "proposing a proper hypothetical claim"). When the patentee fails to submit a proper hypothetical claim for consideration, the patentee has "failed to meet his burden of proving that his doctrine of equivalents theory did not ensnare the prior art." *Id.* at 1287.

### B. Analysis

PSI has presented evidence that a prior art NLB valve assembly and the valve assembly covered by prior art United States Patent No. 2,339,101 (the "Parker Patent") used water to guide the valve. *See* Declaration of Jamie Forrest, Exh. 1 to PSI's Motion, ¶ 15; Parker Patent, Exh. B to Forrest Declaration. Therefore, NLB's

doctrine of equivalents theory – that guiding with water is the equivalent of guiding with an element of the valve – cannot succeed unless NLB can show that its theory will not encompass or "ensnare" the cited prior art.

NLB argues that PSI cannot rely on the ensnarement defense because "PSI has never presented a hypothetical claim so that the parties could meaningfully engage in this analysis." *See* NLB's Response to PSI's Motion, p. 6. In support of its position that PSI has the burden to present the hypothetical claim, NLB cites a district court case from 2010, *Tesco Corp. v. Weatherford Int'l, Inc.*, 750 F. Supp. 2d 780, 805 (S.D. Tex. 2010). *See id.* at 6-7. After the *Tesco* decision was issued, however, the Federal Circuit stated clearly and unequivocally that the patentee has the burden of "proposing a proper hypothetical claim." *Jang*, 872 F.3d at 1287. Although PSI cited the Federal Circuit's *Jang* decision in its Reply filed September 30, 2019, NLB continued to argue that PSI has the burden to present the hypothetical claim, again citing *Tesco*. *See* NLB's Reply (filed October 14, 2019), p. 5.

The Federal Circuit in *Jang* held that the patentee has the burden to propose a hypothetical claim for purposes of an ensnarement defense to infringement under the doctrine of equivalents. NLB has failed to propose a hypothetical claim in this case, and the time to do so has expired. As noted by the Federal Circuit, when the patentee fails to submit a proper hypothetical claim for consideration, the patentee has "failed

to meet his burden of proving that his doctrine of equivalents theory did not ensnare the prior art." *Jang*, 872 F.3d at 1287. PSI is entitled to summary judgment on NLB's claim that the NX-series products infringe Claim 33 of the '812 Patent under the doctrine of equivalents.

## V. DOCTRINE OF PERMISSIBLE REPAIR

NLB argues that PSI sells the NLB-type parts that, when used by a customer in a pump, include all limitations in Claim 33 of the '812 Patent. On that basis, NLB asserts a contributory infringement claim under 35 U.S.C. § 271(c) and an induced infringement claim under 35 U.S.C. § 271(b).[4] PSI argues that there is no infringement, induced or contributory, because the sale of these replacement parts is protected by the permissible repair doctrine. Both parties have moved for summary judgment on PSI's permissible repair defense.

---

[4] "Whoever offers to sell or sells within the United States . . . a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer." 35 U.S.C. § 271(c).

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).

### A. Governing Legal Principles

It has long been established that "replacement of individual unpatented parts, one at a time, whether of the same part repeatedly or different parts successively, is no more than the lawful right of the owner to repair his property." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 346 (1961). This is true because the "right of use transferred to a purchaser by an authorized sale 'include[s] the right to repair the patented article.'" *Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, 930 F.3d 1314, 1323 (Fed. Cir. 2019) (quoting *Kendall Co. v. Progressive Med. Tech., Inc.*, 85 F.3d 1570, 1573 (Fed. Cir. 1996)). "The Supreme Court has taken an expansive view of conduct that constitutes permissible repair for a patented combination of unpatented elements." *Sage Prods., Inc. v. Devon Indus., Inc.*, 45 F.3d 1575, 1578 (Fed. Cir. 1995).

Permissible repair exists if the part at issue is a readily replaceable part. *See Husky Injection Molding Sys. Ltd. v. R & D Tool Eng'g Co.*, 291 F.3d 780, 787 (Fed. Cir. 2002). The doctrine of permissible repair is directed primarily to the replacement of broken or worn parts, but applies also to the "replacement of parts that are neither broken nor worn." *Id.* at 788. If a part is readily replaceable, "it is irrelevant whether the part was an essential element of the invention." *Id.* The doctrine of permissible repair is not limited to temporary or minor repairs but, instead, encompasses any

repair that is necessary for the "maintenance of the 'use of the whole' of the patented combination through replacement of a spent, unpatented element." *See Sage*, 45 F.3d at 1578 (quoting *Aro*, 365 U.S. at 346).

The burden of proof is on the party asserting permissible repair. *See Fuji Photo Film Co. v. Int'l Trade Comm'n*, 474 F.3d 1281, 1295 (Fed. Cir. 2007). Accordingly, PSI bears this burden here.

### B. Analysis

PSI has presented evidence that the NLB-type parts are readily replaceable parts. The parts are sold by PSI to replace parts that need to be replaced during the useful life of the NLB pump and valve assembly. *See* PSI Response to NLB Interrogatory No. 18, Exh. K to NLB's Motion. NLB sells similar replacement parts because the parts are "wear products" that "wear out" and need to be replaced. *See* Deposition of Drew Waltenbaugh (NLB's President and Chief Executive Officer), pp. 42-43. PSI presented deposition testimony from Donald Anthony Wojciechowski, NLB's engineer, that NLB expects a customer to "get at least 1,000 hours of run time out of a valve before it needs to be replaced." *See* Wojciechowski Depo., p. 114. The entire machine, on the other hand, would have a "limitless" lifetime if worn parts are replaced, except that the engine may "give up" after 4,000 or 5,000 hours of run time, "sometimes more." *See id.* It is not relevant to the permissible repair defense whether

the parts need to be replaced because of normal wear or because they are damaged due to abnormal operating conditions. Indeed, this has been established law since 1850, when the Supreme Court held that when the patentee sells a machine to a purchaser and the purchaser "repairs the damages which may be done to it, it is no more than the exercise of that right of care which every one may use to give duration to that which he owns, or has a right to use as a whole." *Wilson v. Simpson*, 50 U.S. 109, 123 (1850); *see also Aro*, 365 U.S. at 342 (Supreme Court "decisions specifically dealing with whether the replacement of an unpatented part, in a patented combination, that has worn out, been broken or otherwise spent, is permissible 'repair' or infringing 'reconstruction,' have steadfastly refused to extend the patent monopoly beyond the terms of the grant").

NLB argues that PSI has failed to substantiate its permissible repair defense, but the record refutes NLB's argument. PSI has presented evidence – much of it from NLB witnesses – that the NLB-type parts it sells are true replacement parts protected by the permissible repair doctrine. As a result, PSI is entitled to summary judgment on the contributory infringement claim under § 271(c) and the induced infringement claim under § 271(b) as to the NLB-type parts. NLB's cross-motion on this theory is denied.

## VI.  FALSE ADVERTISING CLAIM

NLB asserts a false advertising claim under the Lanham Act, alleging that statements by PSI on its Facebook page were false. The Facebook page reads:

> Get all of your Replacement NLB Pump Parts from PSI! Discharge valves for NLB 225 Series and 325 Series pumps are now available for only $99! Made from superior materials, our non-flaking parts are guaranteed to last longer than our competitors' parts.

Facebook page, Exh. 3 to Amended Complaint [Doc. # 6]. NLB challenges the statements that PSI parts are made from "superior materials" and are "guaranteed to last longer" that competitors' parts. Both parties have moved for summary judgment on the false advertising claim.

### A.  Governing Legal Principles

The Lanham Act focuses on commercial interests that have been harmed by a competitor's false advertising. *See IQ Prod. Co. v. Pennzoil Prod. Co.*, 305 F.3d 368, 375 (5th Cir. 2002). The elements of a false advertising claim under the Lanham Act are: (1) a false or misleading statement of fact about a product; (2) the statement "either deceived or had the capacity to deceive a substantial segment of potential consumers;" (3) the deception was material, *i.e.*, likely to influence the consumer's purchasing decision; (4) the product moved in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement. *See id.*

To obtain money damages for false advertising under the Lanham Act, the plaintiff must first demonstrate that the statement was "(1) literally false; or (2) likely to mislead and confuse customers." *Id.* If the statement at issue is literally false, there is a presumption that it actually misled consumers and no evidence of deception is required. *See id.* If, however, the statement is misleading or ambiguous, "the plaintiff must demonstrate actual deception through direct evidence of consumer reaction to the advertising or evidence of consumer surveys or consumer reaction tests." *Id.*

### B. Analysis

NLB argues that Facebook page statements that PSI parts are made from "superior materials" and are "guaranteed to last longer" than competitors' parts are literally false and, therefore, presumed to be confusing to consumers. NLB has presented evidence that PSI's parts lack a "sacrificial coating" that is present on the NLB parts. Therefore, NLB argues, it is nonsensical for the *absence* of this coating to constitute a "superior material." *See, e.g.*, NLB Response to PSI's Motion, p. 9.

PSI has presented evidence from the person who posted the statement, its President and Chief Executive Officer Todd Shawver, that the statements are true. Shawver states that PSI "undertook to solve the well-known problem of NLB's discharge valves whereby the coating on the valve stem cracks and flakes off." *See* Shawver Declaration, Exh. 2 to PSI's Motion, ¶ 2. Shawver states that PSI uses "a

stainless steel that is roller burnished to make the valve stem harder and smoother, and then electro-polished to further reduce the friction when the stem contacts the guide." *Id.* Because the material used by PSI does not flake off, Shawver deems the material "superior" to that used by NLB. *Id.*

The parties have presented conflicting evidence regarding whether the statement that PSI uses "superior material" is true or is "literally false."[5] Because there is a genuine issue of material fact on this element, summary judgment is inappropriate on the false advertising claim. Each parties' motion for summary judgment on this claim is denied.

## VII. **MOTIONS TO EXCLUDE EXPERT TESTIMONY**

Both parties have moved to exclude expert testimony offered by the opposing party. The expert testimony relates only to infringement issues. Because there are no infringement issues remaining, there will be no need for testimony – expert or

---

[5] In its Reply in connection with the false advertising claim, NLB argues only that the Facebook page statements were literally false, not that they were simply misleading. *See* Reply [Doc. # 63], pp. 7-9. To the extent NLB has not abandoned its claim that the Facebook page statements were misleading, there is a genuine issue of material fact regarding consumer confusion because NLB's cited evidence is hearsay and inadequate for summary judgment. Evidence of customers' general "concerns" and of lost sales of NLB replacement parts to PSI does not demonstrate consumer confusion. Therefore, to the extent NLB seeks summary judgment on the false advertising claim based on misleading statements and consumer confusion, that motion is denied.

otherwise – on infringement. Therefore, the Motions to Exclude regarding expert testimony on infringement are now moot.

## VIII. **CONCLUSION AND ORDER**

Based on the foregoing, PSI is entitled to summary judgment on NLB's claim of literal infringement by PSI's NX-series products, on NLB's claim of infringement under the doctrine of equivalents by the NX-series products, and on its permissible repair defense in connection with the NLB-type replacement parts. There are genuine issues of material fact that preclude summary judgment on the false advertising claim. Because there are no infringement issues remaining, the parties' respective motions to exclude expert testimony are moot. Therefore, it is hereby

**ORDERED** that PSI's Motion for Summary Judgment [Doc. # 52] is **GRANTED** as to the patent infringement claims and **DENIED** as to the Lanham Act false advertising claim. It is further

**ORDERED** that NLB's Motion for Summary Judgment [Doc. # 53] is **DENIED**. It is further

**ORDERED** that PSI's Motion to Exclude Patent Infringement Testimony by NLB Witnesses [Doc. # 50], PSI's Motion to Exclude Testimony of Plaintiff's Expert William Marscher [Doc. # 51], and NLB's Motion to Strike PSI's Expert Reports [Doc. # 53] are **DENIED AS MOOT**.

SIGNED at Houston, Texas, this **14th** day of **November, 2019**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE